## THE WATSON.

(District Court, E. D. Pennsylvania. February 16, 1904.)

### No. 48.

1. SHIPPING—INJURY OF SEAMEN—CONTRIBUTORY NEGLIGENCE.

Libelant, employed as fireman on a steamship, on the second day out had his finger crushed by a furnace door, which swung shut while he was attending to the furnace in the line of his duty. The weight of evidence was to the effect that the catch which should have held the door secure when open was defective, and that the officers of the ship had been notified of the fact some time before. It further appeared that libelant had worked at the furnace for two days, and must have known the condition of the catch. *Held,* that both were negligent, and libelant was entitled to recover half his damages.

In Admiralty. Action for personal injury.

Joseph Hill Brinton, for libelant.
Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. The libelant was hired to serve as a fireman upon the steamship Watson during a voyage from Philadelphia to the Island of Jamaica and return, and began the voyage on the 13th day of May, 1903. Two days afterwards, while the vessel was at sea, the libelant was performing his duty in the watch beginning at 12 o'clock noon and ending four hours thereafter. Shortly before the end of the watch he was breaking up the fire under one of the boilers in his charge with an iron rod called a "slicing bar," when the heavy iron door of the furnace swung to and struck

¶ 1. Negligence of both master and servant, division of damages in admiralty, see note to Wm. Johnson & Co. v. Johansen, 30 C. C. A. 678.
See Seamen, vol. 43, Cent. Dig. §§ 189, 190.

the right hand that was upon the slicing bar, injuring the little finger so badly that about half of it had to be cut off when the ship arrived at Port Antonio. The libelant avers that the catch which is intended to hold the door open was defective, and that this defect was known to the proper officers of the ship. Evidence was offered to show that this catch had been out of order for three trips, and was known to be defective, one of the witnesses testifying that he had reported the matter to the third assistant engineer two or three times. It was also testified that during the voyage immediately following one of the furnace doors was found to have a defective catch, although this particular door was not specified by the witness. It is not only customary, but is necessary, that these furnace doors shall be kept open by reliable catches; otherwise they swing with the motion of the vessel, and the firemen cannot work with either convenience or safety. It was therefore the duty of the ship to see that these appliances were properly attached, and were maintained in good order. The testimony concerning the notice to the ship, and also concerning the existence of a defective catch at the time the injury occurred, is conflicting. The chief engineer and the third assistant contradicted the libelant and his witnesses upon both points, and in this condition of the proof I have had some difficulty in coming to a conclusion. Upon the one hand it is clear that the libelant did suffer the injury complained of, and I think it is also clear that the injury was inflicted by the furnace door swinging to with violence and striking him upon the hand. But I think it can hardly be questioned that the libelant himself knew that the catch was defective. He had been working for two days close to this door, and during most of that time the vessel was at sea, and was subjected to the ordinary and inevitable motion of a ship upon the waters of the North Atlantic Ocean. If the catch was defective, I can entertain no doubt that the libelant must have been aware of it; and when he said that he did not know it was out of order until he was injured I cannot accept that statement as true. There is no evidence to indicate how the injury could have happened if the catch had been in order, and I have therefore come to the conclusion that the testimony of the libelant and his witnesses upon this point is to be accepted. There is perhaps some significance, also, in the fact that the steamship did not call other witnesses who presumably would have had some knowledge of the condition of the catch at the time of the injury. I think, therefore, that the steamship was negligent in failing to keep this catch in order after having been notified of its unsafe condition, and I am also forced to the conclusion that the libelant knew of its unsafe condition, and yet continued to work exposed to this obvious danger. Both parties being negligent, therefore, the damages must be divided.

If the parties desire a reference to a commissioner in order that other testimony may be taken concerning the amount to be recovered, an appointment will be made; otherwise I will fix the amount of the damages upon being notified that a commissioner is not desired.